Millig-AN J.,
delivered tbe opinion of tbe court:
Tbis is a claim for $1,016 32, wbicb tbe claimant alleges is due bim on account of commutation of fuel and quarters, and tbe 33£ per cent, extra an.d additional pay allowed to all officers of tbe army, under tbe act of Congress approved March 2,1867.
Tbe essential facts are found to be as follows :
1. Tbe claimant was an officer in the volunteer service of tbe United States during tbe late civil war, and at its close be beld tbe rank of colonel in tbe 46tb regiment United States colored troops.
2. In January, 1866, bis regiment was mustered out of service, but be was retained until tbe 1st day of January, 1868, when be was regularly mustered out and honorably discharged.
3. On tbe 12th of June, 1865, under a special order from tbe Secretary of War, be was assigned to duty under Major General O. O. Howard, Commissioner of Bureau of Befugees and Freedmen, and directed to report by letter to that officer for instruction.
4. The claimant having, as directed, reported to General Howard, was, under an order of tbe Commissioner, dated December 14,1866, appointed inspector in tbe Freedmen’s Bureau, with bis station in Washington City, and directed to report in person, without delay, to tbe Commissioner for special instructions.
5. On tbe 22d of December, 1866, tbe claimant reported in person, and was assigned to duty at headquarters of tbe bureau in tbis (Washington) city.
6. Tbe records in tbe Paymaster General’s office show that Colonel Whittlesey was paid by that department as colonel from July 1, 1866, to March 2, Í867, as follows: Monthly pay proper, $126 66; servants’ pay, $32; servant’s clothing, $13; rations for self and servants, in month of thirty days, $120; total per , month, $291 66.
From March 2,1867, to December 31,1867, be was paid as follows: Pay proper, $146 66; servant’s pay, $32; servants’ clothing, $13; rations for self and servants, in month of thirty days, $72; .total per month, $263 66.
Tbe records of tbe War Department show that be was not paid by that department subsequent to tbe 31st of December, 1867.
*101 7. We further find that the claimant, under the authority-before shown, did duty in the bureau at Washington from the 1st of January, 1868, until the 16th of July following, for which all pay and allowance for commutation of fuel and quarters, and also the 33|- per cent, on his pay proper, has been denied him, and he now sues in this court for compensation for these three items for the time above stated.
No question is made in this record as to the pay proper due the rank which the claimant held in the army. It is admitted that this has been paid him, and all he seeks to recover in this action is commutation for fuel and quarters, and the 33£ per cent, on his pay proper from the 1st of January, 1868, to the 16th of July following. The rights of the plaintiff, under the facts of this case, depend much upon the construction to be given to the several acts of Congress involved in it.
By the fourth section of the Act 16th Jtoly, 1866, (14 Stat., L., 173,) it is provided, “ that officers of the Yeteran Beserve Corps, or of the volunteer service, now on duty in the Freedmen’s Bureau as assistant commissioner, agents, medical officers, or in other capacities, whose regiments or corps have been or may hqreafter be mustered out of service, may be retained upon such duty as officers of said bureau, with the same com-, pensation as is now provided by law for their respective grades; and the Secretary of War shall have power to fill vacancies until other officers can be detailed in their places without detriment to the public service.”
The interpretation of this section of the statute given in this case by the Acting Attorney General so exactly expresses my own views, that I shall be pardoned for incorporating it in this opinion. He says: “ There seems to be but little, if any, room for doubt that Congress intended by this provision to allow to the military officers therein mentioned, who should be retained upon duty in the bureau, the pay and allowances belonging to their respective grades in the military service under the then existing provisions of law. This is manifest, I think, as well from the language employed in the section, as from the other parts of the same act, and corresponding provisions of the previous statute relating to the assignment of army officers to duty in the bureau. The act of 1865, while authorizing such officers to be detailed for duty there, ‘ without increase of pay or allowance,’ obviously contemplated that they were to receive the *102 same pay and allowances to which their commissions in the military service entitled them, no other provision for their compensation being made. So, likewise, the corresponding section in the act of 1866, which authorized military officers to be assigned to duty in the bureau without increase of pay or allowances, clearly had in view the same thing. The object of the fourth section of the act of 1866 was to enable veteran reserve or volunteer officers, assigned to duty in the bureau, to be continued on such duty after their regiments or corps were mustered out of the service; but it introduced no new rule for their compensation. The officers so continued or retained on duty were to receive the same compensation then provided by law ‘for their respective grades, not in the bureau, but in the army; in other words, the pay and allowances appropriate to the rank which each held in the army, subject to the same regulations which govern allowances for officers in the military service.’”
Admitting this view of the fourth section of the act of 1866 to be correct, it is insisted in argument that it does not apply to an officer detailed to duty in the bureau after he is mustered out of service. This objection, it is believed, can be readily answered by reference to the subsequent act of Congress connected with the Bureau of Freedmen and Refugees. The claimant was appointed inspector in the bureau on the 14th of December, 1866, under the act of July 16,1866, which would have expired by its own limitation in two years from the date of its passage, had it not been continued by subsequent legislation. But eleven days before the expiration of the act of 1866, the Act 6th July, 1868, (15 Stat. L., 83,) was passed, which continued in force the acts of March 3,1865, and July 16,1866, for■ one year from and after the 16th of July, 1868, except as modified by the act of 1868. The fourth section of this act is in the following language: “ That officers of the Veteran Reserve Corps, or of the volunteer service, now on duty in the Freedmen’s Bureau as assistant commissioners, agents, medical officers, or in other capacities, who have been or may be mustered out of service, may be retained by the Commissioner, when the same shall be required for the proper execution of the laws, as officers of the bureau, upon such duty and with the same pay, compensation, and allowances from the date of their appointment, as now provided by law for their respective grades and duties at the dates of their muster-out and discharge; and such officers so *103 retained shall have, respectively, the same authority and jurisdiction as now conferred upon ‘ officers of the bureau7 by act of Congress, passed on the sixteenth of July, in the year eighteen hundred and sixty-six.”
This section is doubtlessly subject to criticism, but there is but little difficulty in applying it in this case. The intention of Congress evidently was, to authorize the Commissioner in the administration of his bureau to avail himself of the experience of officers in the Veteran Eeserve Corps, or volunteer service, by retaining such officers as the public service might require in the bureau, with the “same pay, compensation, and allowances,” to which their respective ranks entitled them while in the army. Such is the construction we have given to the fourth section of the act of 1866; and this section does not, in our opinion, change the. rule of compensation. It carries the principle recognized in the former statute one step further, and authorizes the Commissioner to retain officers of the classes mentioned in his service after the date of their muster-out, and legalizes the acts of such officers in the bureau; but it introduces no new rule of compensation, or change in the authority of the officers so retained. The phrase “from the date of their appointment,” employed in the act of 1868, is answered by the act of retaining the claimant in the service of the bureau after he was mustered out, and, in our opinion, without a formal new appointment, entitles him to all pay and emoluments to which he was entitled as an officer of the army at the date of his muster-out.
2. The right of an officer of the army to commutation of fuel and quarters does not, as far as I am advised, rest upon any specific legislation. It springs out of the general authority of the War Department, and has been indirectly sanctioned by Congress from the origin of the government. Long-established and uninterrupted custom has the authority of law, and this usage has been so long practiced in the army, and so often sanctioned by Congress in appropriations for the payment of such commutations, that the right of officers, under the regulations of the army, to such commutation, cannot now be questioned. (1 Opinions of Attorneys General, vol. 1, p. 475.)
Article 1080, Devised Regulations for the Army of the Gnited States, 1861, provides for the commutation of quarters “ when public quarters cannot be furnished,” at a rate fixed by the Secretary of War, and for fuel at the market price delivered.
*104 But it is argued in this case no commutation can be allowed until tbe claimant has shown a demand for fuel and quarters, and that they could not be furnished. His station was at Washington, D. 0., and the 1081st article of the Army Regulations provides, in specific terms, for the commutation of quarters in this city, which must be taken as an authoritative declaration that there are no public quarters in Washington which officers serving without troops can occupy. It follows, therefore, that the claimant is entitled to the commutation of fuel and quarters due his rank when he was mustered out of the military service, at the rate fixed by the Army Regulations for Washington City.
' The Act 2d March, 1867, (14 Stat. L., 422,) declares: “ That for two years from the first day of July, 1866, all officers of the' army below the rank of major general, including the professors at West Point, shall be paid an addition of thirty-three and a third per centum to their present pay proper $ and the pay and emoluments of all field and other mounted officers shall hereafter be the same as is now provided by law for cavalry officers of like grades.”
But it is insisted that neither the act of 1866 nor of 1868, in this respect, applies to the case under consideration, because the former act ju'ovides that officers retained in the bureau shall receive the “ same compensation as is noto (July 16,1866) provided by lawf and the latter act did ^not take effect until after the act granting the thirty-three and one-third per centum, increase had expired, and the words “ now provided by law ” are used also in the latter act.
We are unable to concur in this proposition. The acts of 1865, 1866, and 1868, are strictly in pan materia, and must be construed together. There is no hiatus between the times of their passage; they constitute in all their essential features but one act, with slight modifications. The act of 1868, which continued in force the previous acts, so far modifies the former acts as to entitle officers retained, on duty in the bureau to receive the u same pay, compensation, and allowances ” “ as now provided by law for their respective grades and duties at the date of their muster-out and discharge.”
The act of March 2, 1867, which allows the addition of thirty-three and one-third per centum to the pay proper of all officers in the army, it will be observed, by its own terms, took *105 effect on tlie 1st of July, 1866, and continued in force until July 1st, 1868. The claimant was not mustered out and discharged until the 1st of January, 1868, when the act of 1867 was in full force. It follows, therefore, as a logical consequence, that he is, under the act of 1868, as fully entitléd to the extra compensation of thirty-three and one-third per centum on his pay proper as if he had remained in the army up to the 16th of July, 1868, when he appears to have ceased to act as an officer in the bureau. We, therefore, find him entitled to recover as follows:
Commutation for fuel and quarters from .January 1 to July 16,1868. $211 36
Commutation for quarters from January 1 to July 16,1868 . 585 00
Increase of pay thirty-three and one-third per centum on his pay proper to July 1,1868. 219 96
Total. 1,016 32
For this sum — $1,016 32 — which is found due the claimant, without regard to any deduction on account of income tax, we direct judgment to be entered.